**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | |
|---|---|
| **ROBIN R. TRITCH,**      ) | |
|                   ) | |
|     **Plaintiff,**     ) | |
|                   ) | |
| **v.**     ) | **CAUSE NO.  1:21-cv-00230-SLC** |
|                   ) | |
| **COMMISSIONER OF SOCIAL**  ) | |
| **SECURITY,** *sued as Kilolo Kijakazi,* ) | |
| *Acting Commissioner of Social Security,*[1] ) | |
|                   ) | |
|     **Defendant.**     ) | |

## OPINION AND ORDER

Plaintiff Robin R. Tritch appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Supplemental Security Income ("SSI").  (ECF 1).  For the following reasons, the Commissioner's decision will be AFFIRMED.

## I.  FACTUAL AND PROCEDURAL HISTORY

Tritch applied for benefits on September 6, 2019, alleging disability beginning January 19, 2019.  (ECF 12 Administrative Record ("AR") 12, 157-62).  Tritch's claim for SSI was denied initially and upon reconsideration.  (AR 57-80).  After a timely request (AR 102-04), a hearing was held on January 22, 2021, before administrative law judge ("ALJ") Genevieve Adamo, at which Tritch, who was represented by counsel, and a vocational expert testified (AR 28-56).  The hearing was held via telephone due to the COVID-19 pandemic.  (AR 30).  On

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security, *see, e.g.*, *Butler v. Kijakazi*, 4 F.4th 498 (7th Cir. 2021), and thus, she is automatically substituted for Andrew Saul in this case, *see* Fed. R. Civ. P. 25(d).

February 2, 2021, the ALJ rendered an unfavorable decision to Tritch, concluding that she is not disabled because she can perform a significant number of jobs in the economy despite the limitations caused by her impairments.  (AR 12-24).  Tritch's request for review was denied by the Appeals Council (AR 1-6), at which point the ALJ's decision became the final decision of the Commissioner, *see* 20 C.F.R. § 416.1481.

Tritch filed a complaint with this Court in June 2021, seeking relief from the Commissioner's decision.  (ECF 1).  In her appeal, Tritch alleges that the ALJ: (1) improperly analyzed her history of substance abuse; (2) impermissibly cherry-picked evidence to support her decision; and (3) erred in overemphasizing daily activities.  (ECF 22 at 6-24).

At the time of the ALJ's decision, Tritch was forty-two years old (AR 57), and the ALJ found that she is capable of performing her past relevant work as an unskilled nursing home housekeeper (AR 23).  In her application, Tritch alleged disability due to depression, anxiety, a history of cutting, eating disorders, cognitive limitations, substance abuse, and concentration and memory deficits.  (AR 177).

## II.  STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted).  The decision will be reversed "only if [it is] not supported by substantial

evidence or if the ALJ applied an erroneous legal standard."  *Clifford v. Apfel*, 227 F.3d 863, 869

(7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative

record but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or

substitute [its] judgment for that of the Commissioner."  *Id.*  (citations omitted).  "Rather, if the

findings of the Commissioner . . . are supported by substantial evidence, they are conclusive."

*Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted).  "In other words, so long

as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant]

is disabled, we must affirm the ALJ's decision denying benefits."  *Books v. Chater*, 91 F.3d 972,

978 (7th Cir. 1996).

### III.  ANALYSIS

*A.  The Law*

Under the Act, a claimant is entitled to SSI if she establishes an "inability to engage in

any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to . . . last for a continuous period of not less than 12

months."  42 U.S.C. § 1382c(a)(3)(D).  A physical or mental impairment is "an impairment that

results from anatomical, physiological, or psychological abnormalities which are demonstrable

by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §

1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process,

requiring consideration of the following issues, in sequence:  (1) whether the claimant is

currently unemployed in substantial gainful activity, (2) whether the claimant has a severe

impairment, (3) whether the claimant's impairment is one that the Commissioner considers

conclusively disabling, (4) whether she is incapable of performing her past relevant work, and

(5) whether she is incapable of performing any work in the national economy."[2] *Dixon v.*

*Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted); *see also* 20 C.F.R. §

416.920.  An affirmative answer leads either to the next step or, on steps three and five, to a

finding that the claimant is disabled.  *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).  A

negative answer at any point other than step three stops the inquiry and leads to a finding that the

claimant is not disabled.  *Id.*  The burden of proof lies with the claimant at every step except the

fifth, where it shifts to the Commissioner.  *Clifford*, 227 F.3d at 868.

### B.   The Commissioner's Final Decision

On February 2, 2021, the ALJ issued a decision that ultimately became the

Commissioner's final decision.  (AR 12-24).  At step one, the ALJ concluded that Tritch has not

engaged in substantial gainful activity since September 6, 2019, the application date.  (AR 14).

At step two, the ALJ found that Tritch has the following severe impairments:  posttraumatic

stress disorder (PTSD), adjustment disorder, major depression, anxiety, borderline intellectual

functioning, and a neurocognitive disorder.  (*Id.*).

At step three, the ALJ concluded that Tritch did not have an impairment or combination

of impairments severe enough to meet or equal a listing.  (AR 15).  Before proceeding to step

four, the ALJ determined that Tritch's symptom testimony was not entirely consistent with the

medical evidence and other evidence of record with respect to her limitations.  (AR 22).  The

ALJ assigned Tritch the following RFC:

> [T]he claimant has the [RFC] to perform a full range of work at all
> exertional levels but with the following nonexertional limitations.

---

[2] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks the claimant can do despite her limitations.  20 C.F.R §§ 416.920(e), 416.945(a).  The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of.  20 C.F.R. § 416.920(e).

These include an ability to perform work requiring only simple work-related decisions, with the ability to respond appropriately to predictable, routine changes in the workplace, and the ability to perform work requiring simple instructions and routine, repetitive tasks, defined as tasks and instructions that can be learned through short demonstration, up to and including one month. The claimant cannot perform work requiring a specific production rate, such as assembly-line work, but she can meet production requirements that allow a flexible and goal oriented pace, and she can maintain the focus, persistence, concentration, pace and attention to engage in such tasks for two-hour increments, for eight-hour workdays, within the confines of normal work breaks and lunch periods. The claimant can tolerate only brief and superficial interaction with supervisors, coworkers, and the general public, which is defined as occasional and casual contact with no prolonged conversations, but contact with supervisors still includes what is necessary for general instruction, task completion, or training. She could not perform tandem tasks.

(AR 21-22). The ALJ found at step four that Tritch is capable of performing her past relevant work as an unskilled nursing home housekeeper, both at medium exertion per the Dictionary of Occupational Titles (DOT), and at light exertion, as actually performed. (AR 23). The ALJ also found that other jobs exist in significant numbers in the national economy that Tritch can perform. (AR 23-24). Therefore, Tritch's application for SSI was denied. (AR 24).

### C. Substance Abuse

Tritch alleges that the ALJ improperly relied on her history of substance abuse in finding her to be not disabled, despite finding her substance abuse to be a non-severe impairment at step two. She argues that the ALJ erred in analyzing her subjective symptoms by improperly relying on her substance abuse to undermine her credibility. The Social Security Act states that "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). As a result, "[w]hen an applicant for disability benefits both has a potentially disabling illness and is a substance abuser, the issue for

the administrative law judge is whether, were the applicant not a substance abuser, she would still be disabled." *Kangail v. Barnhart*, 454 F.3d 627, 628 (7th Cir. 2006). While the claimant bears the burden of proving that her substance abuse is not a contributing factor material to her disability, the ALJ must still "adequately disentangle[]" the effects of the substance abuse from the claimant's other impairments. *Harlin v. Astrue*, 424 F. App'x 564, 568 (7th Cir. 2011). If drug or alcohol use is material to the claimant's disability, then the claimant is to be found not disabled. SSR 13-2p, 2013 WL 621536, at *4 (Feb. 20, 2013).

"In determining whether an individual is disabled, [the ALJ is to] consider all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." Social Security Ruling (SSR) 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017). An ALJ's consideration of a claimant's symptom testimony is entitled to special deference because the ALJ is in the best position to evaluate the credibility of a witness. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). If an ALJ's determination is grounded in the record and she articulates her analysis of the evidence "at least at a minimum level," *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988) (citation omitted), creating "an accurate and logical bridge between the evidence and the result," *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (citation omitted), her determination will be upheld unless it is "patently wrong," *Powers*, 207 F.3d at 435. *See Ray v. Berryhill*, 915 F.3d 486, 490 (7th Cir. 2019) (stating that with respect to an adverse credibility determination, it is a "rare case in which the claimant can overcome the 'considerable deference' [the court] afford[s] such findings unless they are 'patently wrong'" (citation omitted)); *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) (remanding an ALJ's consideration of

a claimant's symptom testimony because the ALJ's decision was based on "serious error in reasoning rather than merely the demeanor of the witness").

The regulations require the ALJ to analyze a variety of factors in making a determination of a claimant's subjective symptoms.  These factors include:  daily activities; the location, duration, frequency, and intensity of pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medications; any additional treatments an individual receives for relief of symptoms; any non-treatment measures taken to relieve symptoms; and any other factors concerning an individual's functional limitations and restrictions due to symptoms.  SSR 16-3p, 2017 WL 5180304, at *4.

Here, the ALJ found that Tritch's "longstanding history of poly-substance abuse, even when considered in combination with all complaints, do not support the imposition of significant limitations of function for 12 months in duration."  (AR 15).  As a result, the ALJ found Tritch's history of poly-substance abuse to be a non-severe impairment.  (AR 15).  The ALJ found that Tritch had "some ongoing substance use (THC) through at least August 2019."  (AR 16).  The ALJ further notes that Tritch denied drug use on the October 1, 2019, drug/alcohol questionnaire, "which appears to comport with the September 2019 cessation of treatment through the Northeastern Center and with the October 3, 2019, return to sustained work with Crossroads Homecare, Inc."  (AR 17).  The ALJ also notes that Tritch used amphetamines/methamphetamines until April 2019, drank alcohol, and used marijuana daily. (AR 17). The ALJ linked this substance abuse to the loss of her job in early 2019 (AR 17), and that she continued to have positive urine drug screens through August 2019 (AR 18).

Tritch asserts that the ALJ both overemphasizes her history of polysubstance abuse in dismissing her subjective symptoms, and also that the ALJ mischaracterizes the evidence from

the periods of her sobriety.  Specifically, Tritch alleges that the ALJ erred in finding that her symptoms greatly improved with sobriety.  The ALJ states that Tritch did not have amphetamines or methamphetamines after April 2019.  (AR 16).  The ALJ notes that there was some THC use through August 2019, but it is unclear how frequent, as the ALJ only notes "some ongoing substance use" as evidence on positive urine drug screens. (AR 16).  Tritch had positive urine tests for TCH on May 1, 2019, May 30, 2019, and August 22, 2019. (AR 341-43).  In May 2019, she reported to having one joint in the evening three to six times per week. (AR 348).

During total sobriety, starting in September 2019, Tritch was noted to initially present with happy affect, but she became more anxious and tearful during the session.  (AR 312).  In April 2020, her symptoms were "slightly improved," although she was noted to be struggling with anxiety.  (AR 364).  On May 4, 2020, it was noted that her symptoms had regressed due to a domestic violence incident with her husband.  (AR 366).  From August through December 2020, however, her symptoms were noted to be continually improving.  In August 2020, Tritch reported doing "much better" with no severe mood swings, less crying, and her anxiety was fairly well controlled.  (AR 390).  Her depression, anxiety, and PTSD were all listed as improved.  (AR 391).  Her mood was euthymic, with fair judgment and insight and good attention and concentration.  (AR 392-93).  By September 2020, she reported that she was doing well on her medication, her anxiety was fairly well controlled, she was using her coping skills around large crowds, and she was able to follow her routine.  (AR 395).  Her depression, anxiety, and PTSD were all noted to be "controlled."  (AR 396).  Similarly, Tritch reported doing "much better" in October 2020, noting that she was "level with her moods."  (AR 400).  Her depression, anxiety, and PTSD were all labeled as "controlled."  (AR 401).  Again, in December 2020, Tritch reported doing well on her medication with manageable moods.  (AR 405).  She again

noted that her anxiety was fairly well controlled, and she stated she was using her coping skills. (*Id.*).  Her depression, anxiety, and PTSD were once again labeled as "controlled."  (AR 406). The ALJ properly noted that Tritch's symptoms improved with sobriety and throughout 2020. (AR 18-19).

Moreover, the ALJ did not improperly consider Tritch's substance abuse in the decision. Despite finding that her substance abuse did not meet the durational requirement, and therefore is non-severe, the ALJ still properly considered the effects of her substance abuse on her symptoms.  The ALJ relied on the state agency physicians in finding that substance abuse "appears to be a complicating factor" in her alleged symptoms.  (AR 17).  The ALJ notes Tritch's substance abuse throughout the decision as it relates to being a complicating factor during her most symptomatic periods.  The ALJ properly considered Tritch's substance abuse and found it to be a contributing factor to her symptoms, and the ALJ found that her symptoms improved following sobriety.  (AR 17-19).  There is no evidence that the ALJ improperly relied on Tritch's substance abuse or otherwise used the evidence of substance abuse to find her less credible.

Similarly, Tritch alleges that the ALJ improperly cherry-picked evidence from June 2019 through August 2019, specifically asserting that the ALJ failed to properly consider this as a period of sobriety during which she continued to suffer from symptoms of her depression and anxiety.  However, the evidence indicates that this was not a period of total sobriety for Tritch. While Tritch reported to her therapist that she continued "abstinence from all substances" during this time period, her urine drug screens continued to come back as positive for THC through August 2019.  (AR 254, 314, 316, 318, 341). As such, the ALJ properly analyzed the evidence and found that Tritch's symptoms improved following sobriety after August 2019.  Tritch then

argues that the ALJ did not address a July 2019 report and its statement that she was currently

sober, but Tritch herself admits that the same report indicates she was currently using

methamphetamines and marijuana.  (AR 254, 260-61).  While Tritch asserts that the ALJ failed

to consider this report's notes on her substance abuse, the ALJ "need not discuss every detail in

the record as it relates to every factor."  *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022)

(citing *Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2021)).  As a result, so long as the ALJ

properly supports her reasoning with specific evidence in the record, the Court will not overturn

the ALJ's decision based on a subjective symptom analysis unless it is patently wrong.  *Deborah*

*M. v. Saul*, 994 F.3d 785, 789 (7th Cir. 2021).  The ALJ properly supported her determination

with pages of specific evidence in the record, noting Tritch's improvement with abstinence and

finding that her substance abuse was a contributing factor in her subjective symptoms.  (AR 15-

21).

The ALJ also repeatedly relied on her return to part-time work (roughly twenty hours per

week), which brought her income to just under sustained gainful activity, in finding that Tritch

has a greater residual capacity for functioning than alleged or than "typically associated with

total disability."  (AR 14, 17, 18, 19).  An ALJ may consider a claimant's part-time work in

assessing limitation, but the Seventh Circuit and other district courts within this Circuit have

repeatedly cautioned that part-time work does not equate to an ability to work full-time when

"the claimant works extremely limited hours and is given significant accommodations in the

work place."  *Wichelman v. Berryhill*, No. 18-cv-557, 2019 WL 2353462, at *2 (W.D. Wisc.

June 4, 2019) (citing *Vanprooyen v. Berryhill*, 864 F.3d 567, 571 (7th Cir. 2017)); *Lanigan v.*

*Berryhill*, 865 F.3d 558, 565-66 (7th Cir. 2017) ("We have cautioned ALJs not to draw

conclusions about a claimant's ability to work full time based on part-time employment,"

especially when "the claimant's employer is accommodating him.").  Therefore, when using a claimant's part-time work to support the RFC determination, "an ALJ must consider whether the work was done under special conditions or accommodations, including permission to 'take frequent rest periods' or 'work at a lower standard of productivity than other employees.'" *Warren v. Colvin*, No. 14 C 1622, 2015 WL 5081486, at *12 (N.D. Ill. Aug. 27, 2015) (quoting 20 C.F.R. § 416.973(c)).  The ALJ did not improperly consider Tritch's part-time work here.

Tritch testified to working about twenty hours per week as a home health aide.  (AR 36). She further testified that her boss is understanding, and that she calls off at least once a week due to struggles to get out of bed or leave her house.  (AR 38-39).  She states that she only works four or five hours at a time.  (AR 40).  She also stated that sometimes she will start her workday, but then call off partway through the day and return home.  (AR 47).  She stated that this happens a couple times a week.  (*Id.*). The ALJ discussed Tritch's part-time work throughout the decision, noting that her return to work indicated that her mental impairment symptoms were not as severe as she alleged.  (AR 15-19).  The ALJ properly considered Tritch's testimony, but found that there is no documented evidence for any accommodations from her boss, and that the most recent mental health treatment records do not indicate any struggles with missing work. (AR 19).  The ALJ notes that the medical record "reflect[s] sustained, controlled, stable improvement not consistent with nor reasonably supportive of such testimony."  (AR 19).  The ALJ properly considered Tritch's part-time work and her testimony, and the ALJ supported her decision with substantial evidence in the record to find that Tritch's part-time work supported a finding that her symptoms were not as limiting as she alleges.

Tritch also argues that the ALJ improperly considered her daily activities in finding her less limited than she alleges.  She argues that the ALJ improperly found that her daily activities

translate into an ability to work full time, *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012),

and improperly disregarded her limitations in performing her daily activities, *Moss v. Astrue*, 555

F.3d 556, 562 (7th Cir. 2009).  In discussing daily activities, the ALJ acknowledges that Tritch

grocery shops with her daughter due to having struggles with crowds, and that her parents and

daughter help her with shopping and completing household chores.  (AR 20).  The ALJ

acknowledges that Tritch receives help in her daily activities, and the ALJ does not improperly

rely on Tritch's daily activities in finding that her symptoms are not as severe as she alleges.

The ALJ does not even analyze Tritch's daily activities as part of the subjective symptom

analysis.  Instead, the ALJ discusses Tritch's daily activities as part of her medical history and

does not rely on her daily activities in the subjective symptom analysis.  (AR 17, 19-20).

Therefore, the ALJ did not improperly rely on daily activities in her subjective symptom

analysis.

### D.  RFC

Finally, Tritch advances an argument that the ALJ failed to include limitations related to

her neurocognitive disorder in the RFC, and that the ALJ failed to include limitations from a

May 2019 mental status examination in the RFC.  The RFC is "the individual's *maximum*

remaining ability to do sustained work activities in an ordinary work setting on a regular and

continuing basis," meaning eight hours a day, for five days a week.  SSR 96-8p, 1996 WL

374184, at *2 (July 2, 1996) (second emphasis omitted).  That is, the "RFC is not the *least* an

individual can do despite his or her limitations or restrictions, but the *most*."  *Id.* at *1; *see also*

*Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004); 20 C.F.R. § 416.945(a)(1).

> The [RFC] assessment is based upon consideration of all relevant evidence in the
> case record, including medical evidence and relevant nonmedical evidence, such
> as observations of lay witnesses of an individual's apparent symptomology, an
> individual's own statement of what he or she is able or unable to do, and many

> other factors that could help the adjudicator determine the most reasonable
> findings in light of all the evidence.

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1995); *see* 20 C.F.R. § 416.945(a)(3).  Therefore,

when determining the RFC, the ALJ must consider all medically determinable impairments,

mental and physical, even those that are non-severe.  20 C.F.R. § 416.945(a)(2); *see also Craft v.*

*Astrue*, 539 F.3d 668, 676 (7th Cir. 2008).

"[T]he expression of a claimant's RFC need not be articulated function-by-function; a

narrative discussion of a claimant's symptoms and medical source opinions is sufficient."  *Knox*

*v. Astrue*, 327 F. App'x 652, 657 (7th Cir. 2009) (citations omitted) (finding that the ALJ

"satisfied the [RFC] discussion requirements by analyzing the objective medical evidence, [the

claimant's] testimony (and credibility), and other evidence").  "The ALJ need not provide a

written evaluation of every piece of evidence, but need only 'minimally articulate' [her]

reasoning so as to connect the evidence to [her] conclusions."  *Id.* at 657-58 (citing *Rice v.*

*Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004)); *see also Catchings v. Astrue*, 769 F. Supp. 2d

1137, 1146 (N.D. Ill. 2011).

The ALJ discussed the May 2019 exam, but notes that the exam is viewed in the context

of "some ongoing substance use (THC)," as evidenced by positive urine drug screens in May

2019.  (AR 16, 342). The ALJ considers many of the findings of the report, but again notes that

Tritch's substance abuse contributed to her mental impairment limitations.  (AR 16).  The ALJ

was therefore not required to list every finding from this mental status exam and explain why the

limitations were not included in the RFC. *Knox*, 327 F. App'x at 657.  The ALJ properly

explained that the May 2019 exam would be viewed in the context of Tritch's polysubstance

abuse at the time.  Tritch alleges that the May 2019 exam's finding that she "does not have

adequate coping skills" directly contrasts with the ALJ's finding of improvement in dealing with

13

crowds by using her coping skills. (ECF 22 at 18). Yet the ALJ properly noted that Tritch's improvement and use of coping skills occurred in 2020, following her abstinence from THC starting in September 2019. (AR 18-19). Tritch is asking this Court to reweigh evidence, which this Court cannot do. *Clifford*, 227 F.3d at 869.

Finally, Tritch provides a series of short, unsupported arguments related to her medication changes, sleep disturbances, and treatment goals that are never listed as met. Tritch relies on speculation to argue that her reliance on timeouts and breathing as coping skills requires additional breaks in the RFC. Yet there is no medical evidence in the record to support this assertion. Tritch also argues that remand is due because of her sleeplessness, but she does not establish why her alleged sleeplessness is relevant or how it would affect her RFC. She has not met her burden to prove her disability and limitations by producing medical evidence. *See Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010); *Gedatus*, 994 F.3d at 904.

Finally, Tritch's argument regarding medication changes fails as well. Tritch asserts that the ALJ failed to consider her "many, nay, near-constant, med changes," which she alleges support her claims of "non-functioning." (ECF 22 at 18). As an initial matter, some of the medication changes cited by Tritch are for her symptoms of insomnia, and do not indicate more severe mental health symptoms. (AR 398). Furthermore, despite small medication changes, the ALJ properly noted that Tritch's symptoms were improving on medication, she reported that she was doing well on medication, and her mental impairments were listed as controlled in 2020. (AR 390-91, 395-96, 400-01, 405-06). Tritch has not shown in the evidence that her medication changes were due to low levels of functioning requiring further limitations in the RFC. As such, the ALJ did not err in her reasoning.

In sum, none of Tritch's arguments reasonably support a finding that the ALJ failed to substantiate her decision with substantial evidence.  Consequently, the Commissioner's final decision will be AFFIRMED.

### IV.  CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED.  The Clerk is DIRECTED to enter a judgment in favor of the Commissioner and against Tritch.

SO ORDERED.

Entered this 8th day of June 2022.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge